**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

NOV 29 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| WILDLANDS DEFENSE; et al., | No. 18-35400 |
| Plaintiffs-Appellants, | D.C. No. 1:17-cv-00408-BLW |
| v. | |
| CECILIA SEESHOLTZ, In her official capacity as Boise National Forest Supervisor; et al., | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| BOISE FOREST COALITION, an unincorporated Idaho association; BOISE COUNTY, a political subdivision of the State of Idaho, | |
| Intervenor-Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted November 7, 2018
Seattle, Washington

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Before: McKEOWN and FRIEDLAND, Circuit Judges, and BOLTON,** District Judge.

Plaintiffs Wildlands Defense, Alliance for the Wild Rockies, and Native Ecosystems Council appeal the district court's denial of a preliminary injunction. Plaintiffs sought to enjoin the operation of two post-fire projects (the "Projects") in the Boise National Forest (the "Forest"). We affirm.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] stronger showing of one element may offset a weaker showing of another"; thus, a preliminary injunction may "issue where the likelihood of success is such that 'serious questions going to the merits [are] raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (third alteration in original) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

The district court concluded that Plaintiffs had shown neither a likelihood of

** The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

success nor serious questions going to the merits of their claims under the National Environmental Policy Act ("NEPA") or the Endangered Species Act ("ESA"). Where a district court denies a preliminary injunction based on this first prong of the preliminary injunction analysis, we review the district court's decision de novo. *Inland Empire Pub. Lands Council v. Schultz*, 992 F.2d 977, 980 (9th Cir. 1993).

Challenges to agency action under NEPA and the ESA are reviewed under the arbitrary and capricious standard. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). "An agency will have acted arbitrarily and capriciously only when the 'record plainly demonstrates that the agency made a clear error in judgment.'" *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1052 (9th Cir. 2012) (alteration omitted) (quoting *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1124 (9th Cir. 2012)).

1. We conclude that Defendants' decision to forego an Environmental Impact Statement ("EIS") was not arbitrary and capricious. Reviewing the determination not to prepare an EIS under the arbitrary and capricious standard "requires us to determine whether the agency has taken a hard look at the consequences of its actions, based its decision on a consideration of the relevant factors, and provided a convincing statement of reasons to explain why a project's impacts are insignificant." *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1239 (9th Cir. 2005) (internal quotation marks and citation omitted).

3

In concluding that neither Project would significantly affect the environment, the Forest Service considered, as required, both the context and intensity of the proposed actions. *See* 40 C.F.R. § 1508.27. In evaluating the context of the site-specific actions at issue, the Forest Service considered the Projects' impacts not only on the total area affected by the fire as Plaintiffs contend, but also on the project areas. In any event, "[t]he 'identification of the geographic area' within which a project's impacts on the environmental resources may occur 'is a task assigned to the special competency of the appropriate agencies.'" *Tri-Valley CAREs*, 671 F.3d at 1127 (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 414 (1976)).

The Forest Service also appropriately considered cumulative impacts. *See* 40 C.F.R. § 1508.27(b)(7). An agency may discharge its obligation to consider cumulative impacts "by aggregating the cumulative effects of past projects into an environmental baseline, against which the incremental impact of a proposed project is measured." *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1111 (9th Cir. 2015). The Forest Service acted within its discretion in doing so in this case. It was not error to include within the relevant environmental baseline the continued existence of roads within the Forest. Additionally, the Forest Service considered the potential for added sediment contribution to streams from the use of roads during salvage operations.

Finally, although Plaintiffs cite scientific evidence suggesting that post-fire salvage logging may impact the environment, Plaintiffs have not established that—nor have they raised a substantial question as to whether—the Forest Service's non-significance determination for these specific Projects, considered in the overall context of the fire area and in light of mitigation measures used, was arbitrary and capricious.

2. We conclude that Plaintiffs have not raised substantial questions on the merits of their ESA claims. The ESA mandates that federal agencies shall not take any action that will result in the destruction or adverse modification of designated critical habitat. 16 U.S.C. § 1536(a)(2). "Destruction or adverse modification" is defined to include "a direct or indirect alteration that appreciably diminishes the value of critical habitat." 50 C.F.R. § 402.02.

Here, Defendants' determinations that the Projects were not likely to adversely affect bull trout or bull trout critical habitat were not arbitrary and capricious. Defendants considered the location of impacts from Project activities in establishing the size and location of Riparian Conservation Areas, and, therefore, contrary to Plaintiffs' contentions, did not ignore impacts from Project activities outside those areas in any relevant sense. Defendants also considered the possibility of increased sediment resulting from logging roads and salvage logging activities, including by preparing an additional analysis after a slope failure

5

incident.

With respect to Plaintiffs' ESA Section 7(d) claim, Plaintiffs provided adequate notice to Defendants to invoke this court's jurisdiction over the claim. *See* 16 U.S.C. § 1540(g)(2)(A); *Conservation Cong. v. Finley*, 774 F.3d 611, 617-18 (9th Cir. 2014).  But the claim fails on the merits because the Forest Service, in consultation with the Fish and Wildlife Service, already determined that the Projects were not likely to adversely affect bull trout or bull trout critical habitat. Thus, Section 7(d) does not preclude the Projects' continuing operation during the pendency of the reinitiated Boise Forest Plan consultation.

**AFFIRMED.**